1
2
3
4
5
6
7

O

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   MICHAEL C. JONES,                )   EDCV 07-850-OP
                                      )
12                      Plaintiff,    )   MEMORANDUM OPINION AND
                                      )   ORDER
13          v.                        )
                                      )
14   MICHAEL J. ASTRUE,               )
     Commissioner of Social Security, )
15                                    )
                                      )
16   _____ )

17

18          The Court[1] now rules as follows with respect to the six disputed issues

19   listed in the Joint Stipulation ("JS").[2]

20   ///

21   ///

22   _____

23          [1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before
     the United States Magistrate Judge in the current action.  (See Dkt. Nos. 7, 9.)

24
            [2]  As the Court advised the parties in its Case Management Order, the
25   decision in this case is being made on the basis of the pleadings, the
     Administrative Record ("AR"), and the Joint Stipulation filed by the parties.  In
26   accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has
     determined which party is entitled to judgment under the standards set forth in 42
27   U.S.C. § 405(g).

28

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1.    Whether the ALJ properly considered Plaintiff's credibility;

2.    Whether the ALJ properly considered the treating physician's opinion of disability;

3.    Whether the ALJ properly considered the nurse practitioner's opinion of disability;

4.    Whether the ALJ properly developed the record;

5.    Whether the ALJ properly considered the type, dosage, effectiveness, and the side effects of Plaintiff's medications; and

6.    Whether the ALJ posed a complete hypothetical to the vocational expert ("VE").

(JS at 2-3.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).

2

1  Where evidence is susceptible of more than one rational interpretation, the
2  Commissioner's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450,
3  1452 (9th Cir. 1984).

**III.**

**DISCUSSION**

**A.   The ALJ Properly Considered Plaintiff's Credibility.**

7          The ALJ found that Plaintiff had the medically determinable severe
8  impairments of obesity, hypertension, diabetes mellitus, alcoholism, depressive
9  disorder not otherwise specified, and alcohol-induced anxiety disorder not
10 otherwise specified.  (AR at 13.)  He also found that Plaintiff had the residual
11 functional capacity to perform a range of light work, including lifting and/or
12 carrying up to twenty pounds occasionally and ten pounds frequently; sit without
13 restrictions and be on his feet for six hours during an eight-hour workday; was
14 capable of moderately complex tasks; was capable of object-oriented work with
15 no public contact; cannot operate hazardous machinery, be responsible for safety
16 operations, perform fast-paced work such as rapid assembly line work; and must
17 lie down during the lunch hour.  (Id. at 14.)  Plaintiff also was able to type thirty-
18 five words per minute.  (Id.)

19         At the hearing, Plaintiff testified that he has problems with fatigue and
20 feeling tired.  (Id. at 343.)  He stated there are days he does not want to get out of
21 bed, does not want to do yard work, or even the dishes, and days where he just
22 watches TV and dozes off.  (Id.)  He testified that he takes medications to curb his
23 craving for alcohol (id. at 331-32), for anxiety and depression (id. at 344), and for
24 fluid retention (id. at 345).  He also takes medication for back pain and type II
25 diabetes.  (Id. at 152, 344.)  If he stands for a "real long" period of time, he gets a
26 sciatica-type pain in his right leg and has to bend over to relieve the pain.  (Id. at
27 345.)  Sitting is also a problem because of fluid retention.  (Id.)  He gets cold

28

sweats and his hands shake in stressful situations.  (Id. at 346.)  He also testified that he has had a problem with anxiety his whole life.  (Id.)

With respect to Plaintiff's testimony, the ALJ found as follows:

> The claimant and his wife did not credibly establish any conclusions different than those established herein.  The claimant testified his diabetes is not well-controlled, that he is fatigued, and does little during the day.  He also discussed his problems with alcohol, depression, and anxiety, but admitted he had worked despite these problems in the past. The claimant's wife also discussed the claimant's anxiety and his aversion to leaving the house unless she encourages him to do so.  She also acknowledged, however, that she has been married to the claimant for 30 years, that the claimant has had problems with anxiety since she met him, and that he was able to work for many years despite his anxiety.

(Id. at 15.)

An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony.  Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991).  An ALJ may properly consider "testimony from physicians . . . concerning the nature, severity, and effect of the symptoms of which [claimant] complains," and may properly rely on inconsistencies between claimant's testimony and claimant's conduct and daily activities.  See, e.g., Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (citation omitted).  An ALJ also may consider "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and aggravating factors"; "[t]ype, dosage, effectiveness, and adverse side-effects of any medication"; "[t]reatment, other than medication"; "[f]unctional restrictions";

4

1   "[t]he claimant's daily activities"; "unexplained, or inadequately explained, failure
2   to seek treatment or follow a prescribed course of treatment"; and "ordinary
3   techniques of credibility evaluation," in assessing the credibility of the allegedly
4   disabling subjective symptoms.  Bunnell, 947 F.2d at 346-47; see also Soc. Sec.
5   Ruling 96-7p; 20 C.F.R. 404.1529 (2005); Morgan v. Comm'r of Soc. Sec.
6   Admin., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's
7   daily activities, and on conflict between claimant's testimony of subjective
8   complaints and objective medical evidence in the record); Tidwell v. Apfel, 161
9   F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support,
10  lack of treatment, daily activities inconsistent with total disability, and helpful
11  medication); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may
12  properly rely on the fact that only conservative treatment had been prescribed);
13  Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on
14  claimant's daily activities and the lack of side effects from prescribed medication).

15       Plaintiff contends the ALJ failed to properly indicate which portions of
16  Plaintiff's testimony were found not credible.  (JS at 5.)  He also contends that the
17  ALJ failed to provide specific evidence that undermined Plaintiff's testimony.
18  (Id.)  The Court notes, however, that the ALJ specifically stated only that he found
19  Plaintiff's statements did not any establish any conclusions different from those he
20  had reached in arriving at his decision for the relevant period.  With respect to
21  Plaintiff's problems with alcohol, depression, and anxiety, the ALJ agreed with
22  the medical expert, Dr. Malancharuvil, that Plaintiff's mental impairments,
23  including his alcoholism, cause no more than a moderate restriction in activities of
24  daily living, mild difficulties in maintaining social functioning, and moderate to
25  marked difficulties in maintaining concentration, persistence, or pace.  (AR at 14.)
26  Plaintiff admitted these were long-standing problems and that he had worked in
27  the past despite them.  (Id. at 14-15.)  See Gregory v. Bowen, 844 F.2d 664, 667
28

1  (9th Cir. 1988) (claimant not disabled where condition was unchanged and did not
2  prevent her from working in the past).  Plaintiff's wife confirmed the long-
3  standing nature of the problems and also noted they did not prevent him from
4  working in the past.  (AR at 348-49.)  In July 2004, Plaintiff reported to a
5  consultative examiner that his depression worsened when he had to move in with
6  his brother-in-law but that he "did continue to work . . . with his brother in law."
7  (Id. at 250.)  He made that same report to his doctor in December 2003.  (Id. at
8  171.)  As noted by the ALJ, the records indicate that even when drinking, Plaintiff
9  remains "fairly high functioning and capable of performing work activities."  (Id.
10 at 14.)

11      Moreover, the ALJ did credit Plaintiff's testimony in part in finding that
12 Plaintiff could perform light, moderately complex, object-oriented work, not
13 requiring public contact or fast pace, and with the ability to lie down during the
14 lunch hour.  (Id.)  Based on the vocational expert's testimony, the ALJ also found
15 that Plaintiff could not do his past relevant work as a data processor.  (Id. at 15.)
16 The ALJ also took into account Plaintiff's claim that his diabetes was not under
17 control and that he was often fatigued but again noted that he had previously
18 worked despite these problems.  (Id.)  The medical records indicate that Plaintiff's
19 diabetes was being monitored but that he was not following the advice of his
20 doctors with respect to diet and exercise.  (Id. at 171-72.)  There were no records
21 that stated that Plaintiff's complications from diabetes would have precluded him
22 from working during the relevant period.  (Id. at 15.)

23      With respect to Plaintiff's testimony about his sitting/standing limitation
24 due to his disability, his sciatica, or the need to elevate his legs, there was no
25 indication of such limitations during the relevant period.  (Id.)  In fact, as the ALJ
26 noted, the treating records from the Veterans Administration failed to reveal any
27 limitations inconsistent with the RFC or disability finding, and the results of a
28

1   number of physical examinations were largely normal.  (Id. at 14, 138, 145, 162,

2   174-75, 261-62.)  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)

3   (medical evidence is a factor the ALJ can consider in his credibility analysis);

4   Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (it is probative that no

5   physician specifically opined that Plaintiff was unable to perform any work).

6       Based on the foregoing, the Court finds the ALJ's credibility finding was

7   supported by substantial evidence and was sufficiently specific to permit the Court

8   to conclude that the ALJ did not arbitrarily discredit Plaintiff's subjective

9   testimony.

10  **B.    The ALJ Properly Considered the Treating Physician's Opinions.**

11      Plaintiff contends that the ALJ failed to properly consider the January 15,

12  1998, report of Celeste B. Waters, M.D., of the Employment Development

13  Department ("EDD") , who diagnosed Plaintiff with depression and a panic

14  disorder.  (AR at 106.)  Dr. Waters also stated that Plaintiff's depression and panic

15  states impair his concentration, leading to embarrassment and acute self-

16  consciousness, in turn exacerbating the panic syndrome.  (Id.)  She opined that it

17  takes one to two years to reach complete recovery for these impairments and to

18  return to a level of ability to function on the job.  (Id.)  On that date, she estimated

19  that Plaintiff would be able to return to his regular or customary work on May 1,

20  1998.  (Id.)

21      Plaintiff also contends the ALJ failed to properly consider the October 9,

22  2002, report of Ali Aziz, M.D., also from the EDD, who diagnosed Plaintiff with

23  depression, not otherwise specified, and who also noted that Plaintiff has anxiety

24  and insomnia.  (Id. at 112.)  Dr. Aziz noted that these conditions are treated with

25  medication and psychotherapy.  (Id.)

26      Specifically, Plaintiff contends that the ALJ failed to discuss these opinions,

27  especially the fact that they show Plaintiff suffered from a longitudinal history of

28

7

1  a mental impairment, and failed to provide specific and legitimate reasons for
2  disregarding those opinions. (JS at 8, 9, 11.)

3       It is well-established in the Ninth Circuit that a treating physician's
4  opinions are entitled to special weight, because a treating physician is employed to
5  cure and has a greater opportunity to know and observe the patient as an
6  individual. McAllister v. Sullivan, 880 F.2d 1086, 1089 (9th Cir. 1989). "The
7  treating physician's opinion is not, however, necessarily conclusive as to either a
8  physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881
9  F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62
10 & n.7 (9th Cir. 1989)). The weight given a treating physician's opinion depends
11 on whether it is supported by sufficient medical data and is consistent with other
12 evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating
13 physician's opinion is uncontroverted by another doctor, it may be rejected only
14 for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.
15 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating
16 physician's opinion is controverted, it may be rejected only if the ALJ makes
17 findings setting forth specific and legitimate reasons that are based on the
18 substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.
19 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th
20 Cir. 1987). The same standards apply to examining physicians. See, e.g., Lester,
21 81 F.3d at 830-31.

22      In this case, the ALJ relied on the testimony of the medical expert, Dr.
23 Malancharuvil, who reviewed the relevant medical records and opined, in
24 particular, that Plaintiff could perform moderately complex work with no public
25 contact. (AR at 332-38.) The ALJ's finding was also supported by the July 2004
26 opinions and consultative examinations of psychiatrist Linda Smith, M.D., and
27 Jamshid Tamiry, M.D., both of whom found Plaintiff capable of an even greater
28

8

1   range of work than that ultimately assessed by the ALJ.  (Id. at 250-55, 257-63.)

2   See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (the opinion of a

3   nontreating source based on independent clinical findings may itself be substantial

4   evidence); see also Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001)

5   (specialist's opinions entitled to greater weight when related to area of

6   specialization).  Both Dr. Smith and Dr. Tamiry also had the opportunity to review

7   Plaintiff's medical history and to perform examinations close in time to the

8   relevant period.  (AR at 250-55, 257-63.)

9       The ALJ also concluded that the medical reports prior to the alleged onset

10  date of October 1, 2003, shed little light on Plaintiff's RFC during the relevant

11  period of October 1, 2003, to March 31, 2004.  (Id. at 14.)  He also noted that the

12  relevant treating records contained no information to suggest Plaintiff was

13  incapable of performing work within the RFC assessment during the relevant

14  period.  (Id.)  Evidence must relate to the relevant period to be probative.  See

15  Bates v. Sullivan, 894 F.2d 1059, 1064 (9th Cir. 1990), overruled on other

16  grounds by Bunnell, 947 F.2d at 341.  The Ninth Circuit has found that medical

17  reports that are most recent are highly probative.  Osenbrock v. Apfel, 240 F.3d

18  1157, 1165 (9th Cir. 2001) (citing Stone v. Heckler, 761 F.2d 530, 532 (9th Cir.

19  1985)) (medical evaluations even prepared several months before the hearing in a

20  case where the claimant had a worsening condition were not substantial evidence

21  sufficient to rebut more recent conclusions by a treating doctor).  Moreover, the

22  ALJ's finding that Plaintiff suffered from depressive disorder and an anxiety

23  disorder is not inconsistent with the opinions of Drs. Waters and Aziz.

24      Thus, there was no error in the ALJ's failure to further discuss these

25  records.

26  / / /

27  **C.    The ALJ Properly Considered the Nurse Practitioner's Opinion.**

28

1   Plaintiff contends that a September 7, 2006, note made by a nurse
2   practitioner, to the effect that Plaintiff was "unemployable," was not properly
3   considered by the ALJ as a note by a treating source. (JS at 11; see AR at 294.)
4   The Court disagrees.

5   As noted by the ALJ, this medical record was written "after [Plaintiff's]
6   date last insured . . . and therefore shed[s] little light on the claimant's residual
7   functional capacity during the period of adjudication." (AR at 14.) He also noted:

8   Subsequent treating records do show a significant increase in the
9   claimant's use of alcohol in the past year (he reportedly drank three
10   five-liter boxes of wine in seven days in September 2006 . . .) with an
11   associated decrease in functioning . . . , but such findings do not change
12   my assessment of the claimant's ability to function from October 1,
13   2003 through March 31, 2004.

14   (Id. at 15.)

15   The contents of the nurse practitioner's progress note reflect that Plaintiff
16   had been drinking heavily on the weekends around the time of the note and had
17   experienced some rather unpleasant withdrawal-type symptoms, including cold
18   sweats and a panic attack, which caused him to stop drinking in July 2006. (Id. at
19   293.)   Again, the disability period at issue was October 1, 2003, through March
20   31, 2004. The nurse practitioner's comment as to Plaintiff's employability, more
21   than two years after the relevant period of October 2003 through March 2004,
22   simply is not probative of that period.

23   Moreover, a nurse practitioner is not generally an acceptable medical
24   source. See 20 C.F.R. § 404.1513(d) (including nurse practitioner as an "other"
25   medical source). The ALJ may, but is not required to, use evidence from these
26   other sources to show the severity of an impairment. Id. Where a nurse
27   practitioner works in conjunction with a medical physician, this may be

28

1  considered an "acceptable medical source," while a nurse practitioner working on

2  her own is not.  Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996); see also

3  Benton ex. rel. Benton v. Barnhart, 331 F.3d 1030, 1039 (9th Cir. 2003).  While

4  Plaintiff contends the nurse practitioner was working in conjunction with treating

5  physician, Dr. Tan (JS at 14), it actually appears to this Court that Dr. Tan and the

6  nurse practitioner were in completely different departments and the only

7  interaction they had was through a nurse mediary regarding the question of who

8  should fill out Plaintiff's temporary disability form.  (AR at 294-95.)  Even if

9  probative, the Court does not find the nurse practitioner in this case to be at the

10  level of an acceptable medical source.

11      Thus, there was no error in the ALJ's discounting these later medical

12  records of the nurse practitioner.

13  **D.    The ALJ Did Not Fail to Properly Develop the Record.**

14      Plaintiff contends that the ALJ should have obtained the September 2006

15  disability form that was filled out on behalf of Plaintiff by the nurse practitioner,

16  as referenced in the prior issue.  (JS at 14.)  This Court disagrees.

17      The ALJ has an independent duty to fully and fairly develop a record in

18  order to make a fair determination as to disability, even where, as here, the

19  claimant is represented by counsel.  See Celaya v. Halter, 332 F.3d 1177, 1183

20  (9th Cir. 2003); see also Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir.

21  2001) (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)); see

22  also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (citing Brown v. Heckler,

23  713 F.2d 441, 443 (9th Cir. 1983)).   Ambiguous evidence, or the ALJ's own

24  finding that the record is inadequate to allow for proper evaluation of the

25  evidence, triggers the ALJ's duty to "conduct an appropriate inquiry."  See

26  Tonapetyan, 242 F.3d at 1150 (citing Smolen, 80 F.3d at 1288).

27      Because this progress note was not probative of disability during the  period

28

11

at issue, there was no duty to obtain this record.  Moreover, even if probative, the contents of the form are made fairly clear by the progress note, i.e., Plaintiff was requesting certification for a six-month period of temporary disability, indicating "no work," and that request was granted.  (AR at 294-95.)  There was no indication any relevant evidence was ambiguous or inadequate.

Thus, even if probative, there would have been no need to request this form, and there was no error in the ALJ's failure to obtain the disability form itself.

**E.    The ALJ Did Not Err with Respect to Consideration of Alleged Side Effects of Plaintiff's Medication.**

In a Disability Report dated October 12, 2004, Plaintiff reported that he takes Citalopram for his depression, which causes him to be drowsy.  (<u>Id.</u> at 90.)

Under Ninth Circuit law, the ALJ must "consider *all* factors that might have a 'significant impact on an individual's ability to work.'"  <u>Erickson v. Shalala</u>, 9 F.3d 813, 817 (9th Cir. 1993) (<u>quoting</u> <u>Varney v. Sec'y of Health & Human Servs.</u>, 846 F.2d 581, 585 (9th Cir.), <u>relief modified</u>, 859 F.2d 1396 (1988)).  Such factors "may include side effects of medications as well as subjective evidence of pain."  <u>Erickson</u>, 9 F.3d at 818.  When the ALJ disregards the claimant's testimony as to subjective limitations of side effects, he must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medications.  <u>See</u> <u>Varney</u>, 846 F.2d at 545; <u>see also</u> <u>Muhammed v. Apfel</u>, No. C 98-02952 CRB, 1999 WL 260974, at *6 (N.D. Cal. 1999).

In this case, the ALJ considered Plaintiff's testimony that he is fatigued and does little during the day.  (AR at 15.)  However, as discussed previously, the ALJ properly discounted Plaintiff's testimony.  (<u>See</u> Part III.A, <u>supra</u>.)  Moreover, the Court has been unable to find any evidence in the medical records to support Plaintiff's self-report that his medication caused drowsiness.  <u>See</u> <u>Bayliss v.</u>

1 | Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ did not err in failing to
2 | "explicitly address the drowsiness side-effect of [the claimant's] medication" in
3 | making an RFC determination as "the ALJ took into account those limitations for
4 | which there was record support that did not depend on [the claimant's] subjective
5 | complaints"); Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002) (alleged side
6 | effects need not be considered where no objective evidence supported
7 | allegations).  In fact, there are indications that Plaintiff denied any side effects to
8 | the medications he was taking, including Citalopram.  (See, e.g., AR at 156 ("no
9 | s/e from meds"); 160 (same).)

10 | Accordingly, there was no error in the ALJ's failure to further mention the
11 | alleged side effect of the medication.

12 | **F.     The Hypothetical Posed to the Vocational Expert Was Proper.**

13 | Plaintiff contends that the ALJ erred because the hypothetical questions
14 | posed to the VE failed to take into account any mention of the side effects
15 | Plaintiff experiences as a result of his medication, or the testimony offered by
16 | Plaintiff that his hands shake in stressful situations.  (JS at 17; AR at 350-54.)
17 | The Court disagrees.

18 | "In order for the testimony of a VE to be considered reliable, the
19 | hypothetical posed must include 'all of the claimant's functional limitations, both
20 | physical and mental' supported by the record."  Thomas, 278 F.3d at 956 (quoting
21 | Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995)).  Hypothetical questions
22 | posed to a VE need not include all alleged limitations, but rather only those
23 | limitations which the ALJ finds to exist.  See, e.g., Magallanes, 881 F.2d at
24 | 756-57; Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v.
25 | Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986).  Thus, an ALJ must propose a
26 | hypothetical that is based on medical assumptions, supported by substantial
27 | evidence in the record, that reflects the claimant's limitations.  Osenbrock, 240

28 |

13

1    F.3d at 1163-64 (<u>citing</u> <u>Roberts v. Shalala</u>, 66 F.3d 179, 184 (9th Cir. 1995)); <u>see</u>

2    <u>also</u> <u>Andrews</u>, 53 F.3d at 1043 (although the hypothetical may be based on

3    evidence which is disputed, the assumptions in the hypothetical must be supported

4    by the record).

5        As previously discussed, the record evidence did not support Plaintiff's

6    claim that he suffered from side effects from his medications.  While there was

7    some evidence Plaintiff experiences shaky hands in stressful situations, and that

8    he had experienced this condition and nervousness since grade school, there is

9    also evidence that the shaking had significantly subsided, and that he was able to

10   work despite that particular condition.  (<u>See</u> AR at 156, 160, 346-47.)

11       Accordingly, there was no error in the ALJ's hypothetical questions to the

12   VE which did not include these limitations.  <u>Rollins v. Massanari</u>, 261 F.3d 853,

13   857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found

14   to exist, and because his findings were supported by substantial evidence, the ALJ

15   did not err in omitting the other limitations that Rollins had claimed, but had

16   failed to prove.").

## IV.

## ORDER

        IT THEREFORE IS ORDERED that Judgment be entered affirming the

decision of the Commissioner, and dismissing this action with prejudice.

DATED: March 2,  2009        _____

                             HONORABLE OSWALD PARADA
                             United States Magistrate Judge

14